The motion to file the attachments at Dkt. Nos. 70-7 and
70-8 with information regarding confidential negotiations
and related board approvals pertaining to two third-party
JPMC clients who are not parties to this action is granted.
*See In re Bystolic Antitrust Litig.*, 2021 WL 878568, at *2
(S.D.N.Y. Mar. 9, 2021).
Date: November 28, 2023

SO ORDERED.

LEWIS J. LIMAN
United States District Judge

**WILMERHALE**

November 27, 2023

**VIA ECF**

**Brittany B. Amadi**

+1 202 663 6022 (t)
+1 202 663 6000 (f)
brittany.amadi@wilmerhale.com

The Honorable Lewis J. Liman
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   ***Essilor International SAS v. JPMorgan Chase Bank, N.A.***, No. 22-cv-3361

Dear Judge Liman:

We represent JPMorgan Chase Bank ("JPMC") in the above-captioned action.  In light of Your
Honor's Order (ECF No. 77 at 2-3) denying Plaintiff Essilor Manufacturing (Thailand) Co.'s
("EMTC") motion to seal EMTC's motion to compel and certain attachments thereto and JPMC's
motion to seal JPMC's response and the attachments thereto (*see* ECF Nos. 69, 70, 72 and 73),
JPMC respectfully requests that certain third-party information referenced in ECF Nos. 70-7 and
70-8 remain under seal.[1]

ECF Nos. 70-7 and 70-8 reference non-responsive confidential negotiations and related board
approvals pertaining to two third-party JPMC clients who are not parties to this action.  On May
19, 2023, the parties entered into an agreement whereby JPMC may redact such non-party client
identifying information.  *See* Ex. A, Ltr. from R. Rainer to A. Schoenfeld dated May 19, 2023 at
7.  JPMC inadvertently produced the documents found at ECF Nos. 70-7 and 70-8 with third-party
client information unredacted.  Accordingly, pursuant to the parties' agreement, JPMC clawed
back the produced versions of the documents bearing bates numbers, JPMC_EMTC_00076958
and JPMC_EMTC_00076935 (which were filed with the Court as ECF Nos. 70-7 and 70-8) from
EMTC and will re-produce those documents with narrow redactions of the identities of the two
non-party clients referenced therein.  Attached hereto as Exhibits B and C are ECF Nos. 70-7 and
70-8, with JPMC's expected redactions highlighted in yellow.[2]  Courts in this district have held
third-party privacy interests justify the redaction of such non-party identifying information.  *See
SEC v. Ripple Labs, Inc.*, 2023 WL 3477552, at *4-*6 (S.D.N.Y. May 16, 2023) (sealing "identities
of certain non-part[ies]" and finding that "non-party privacy interests justify narrowly tailored
redactions" with the exception of names that had already appeared in public filings); *Skyline Steel,
LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412-13 (S.D.N.Y. 2015) (sealing "emails revealing
confidential negotiations between [plaintiff] and one of its customers").  In addition, courts,
including this one, have allowed for the redaction of non-responsive information that is also non-

---

[1] Although the Court ruled on EMTC's motion to seal its motion to compel and the attachments thereto (ECF Nos.
69 and 77), the Court has not ruled on JPMC's motion to seal the same (ECF No. 78).
[2] JPMC also respectfully requests that the highlighted information in Exhibits B and C—which reflects the non-
party customer names in ECF Nos. 70-7 and 70-8—be filed under seal.

WILMERHALE

Hon. Lewis J. Liman
November 27, 2023
Page 2

public and highly sensitive. *See, e.g.*, *In re Bystolic Antitrust Litig.*, 2021 WL 878568, at *2 (S.D.N.Y. Mar. 9, 2011) (Liman, J.); *see also In Re Namenda*, No. 15-cv-7488, ECF No. 349 (S.D.N.Y. Aug. 9, 2017).  In *Bystolic*, this Court permitted non-responsive redactions where the redacted information was both unrelated to the litigation (*i.e.*, it concerned a different drug than the one at issue) and did not remove content needed to place the responsive information in context. *See id*.  Similarly here, the portions of ECF Nos. 70-7 and 70-8 that JPMC proposes to redact relate to third-party transactions that are discussed separately from portions of the documents discussing EMTC's account terms, and are not necessary to put any of the information related to EMTC account terms in context.

To the extent the standard for a motion for reconsideration applies (as noted above, *see supra* at 1 n.1, the Court has yet to rule on JPMC's motion to seal), a movant is entitled to reconsideration if the movant can demonstrate controlling decisions or factual data that might reasonably be expected to alter the court's conclusion.  *See Arthur Flick Truck Sales, Inc. v. Stuphen East Corp.*, 965 F. Supp. 2d 402, 405 (S.D.N.Y. 2013); *see also VR Global Partners, L.P. v. Bennett (In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.)*, 2008 WL 4962985, at *1 (S.D.N.Y. Nov. 20, 2008) ("Reconsideration is appropriate only where there is an intervening change of controlling law, newly available evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotes omitted)).  In its motion to seal, EMTC explained only that ECF Nos. 70-7 and 70-8 reflect "internal JPMC email[s] discussing a committee meeting relating to certain non-standard client account terms and related approvals."  ECF No. 69 at 2.  EMTC did not explain to the Court that these emails also contained third-party client information unrelated to any of the issues in this case, or differentiate between discussions concerning EMTC account terms and those related to third parties.  In light of this new information, a partial reconsideration of Your Honor's Order (ECF No. 77) is warranted.

JPMC respectfully requests that the Court grant its motion to seal and/or for partial reconsideration, and, consistent with Attachment B of Your Honor's Individual Practices in Civil Cases, keep ECF No. 70 and the attachments thereto under seal, and order EMTC to refile ECF No. 70 and the attachments with redactions consistent with those proposed by JPMC in Exhibits B and C attached hereto.

Respectfully submitted,

*/s/ Brittany B. Amadi*
Brittany B. Amadi

# Exhibit A

# WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE
NEW YORK, NEW YORK 10110

_____

TELEPHONE  (212) 382-3300
FACSIMILE  (212) 382-0050

May 19, 2023

**By Email**

Alan E. Schoenfeld, Esq.
Wilmer Hale
7 World Trade Center
250 Greenwich Street
New York, New York 10007
alan.schoenfeld@wilmerhale.com

Re:     *Essilor International SAS, et al. v. J.P. Morgan Chase Bank, N.A.,*
        22-cv-3361 (LJL) (S.D.N.Y.)

Dear Alan:

On behalf of Plaintiff Essilor Manufacturing (Thailand) Co., Ltd. ("EMTC"), I write in response to your April 28, 2023 letter ("April 28 JPMC Letter") responding to my April 25, 2023 letter to you regarding JPMC's Responses & Objections ("R&Os") to Plaintiff's First Request for Production of Documents ("April 25 EMTC Letter"). As noted below, we previously addressed several of the issues raised in your April 28 JPMC Letter as part of my May 8, 2023 letter to you regarding JPMC's ESI custodians ("May 8 EMTC Letter"), which is incorporated herein.[1]

## JPMC's "First" Through "Seventh" Points

"First" Point. Regarding the "First" point in your April 28 JPMC Letter (at pp. 1-2 and n.1), please refer to pages 2-5 of our May 8 EMTC Letter, and the referenced exhibits annexed thereto, wherein we proffered (by way of examples) a specific factual showing why the JPMC Communications and other Documents that Plaintiff has requested from the time period April 1, 2014 through March 1, 2015 are relevant and discoverable.[2] Please confirm that JPMC will withdraw its objections to searching for and producing responsive ESI for this time period.

---

[1] EMTC's forthcoming response to JPMC's revised search terms proposed on April 25, 2023 for use with JPMC's custodial ESI custodians ("April 25 JPMC Search Term Letter") will reflect the positions that are set forth and/or referenced herein.

[2] For the sake of clarity, this includes EMTC RFPs 2, 6 and 14. *See* April 28 JPMC Letter at n.1.

Alan E. Schoenfeld, Esq.                                                    May 19, 2023
Page 2

"Second" Point. Regarding the "Second" point in your April 28 JPMC Letter (at p. 2 and n.2), please first refer to pages 8-9 of our May 8 EMTC Letter, and the referenced exhibits annexed thereto, wherein we proffered both factual and legal support for the relevance of the requested AML/BSA/KYC-related Communications and Documents. Please confirm that JPMC will withdraw its objections to searching for and producing responsive ESI that relate to these subjects.[3]

Further, in your "Second" point, JPMC refuses to address our concerns arising from JPMC's broad, vague assertion of regulatory confidentiality privileges. We believe a telephone conversation with you is the most effective way to better understand what, if anything, JPMC intends to withhold. For example, insofar as JPMC intends to withhold Suspicious Activity Reports ("SARs") and certain related material pursuant to 31 U.S.C. § 5318(g)(2)(A)(i) and 12 C.F.R. § 21.11(k), will the scope of any such confidentiality assertion be limited to SARs themselves and documents that would reveal the existence of a SAR? Does JPMC agree that the SAR privilege does not extend to (i) the underlying facts, transactions, or documents upon which a SAR or potential SAR is based; (ii) JPMC's investigations of suspicious or unusual activity that do not indicate whether a SAR was filed; or (iii) JPMC's policies directing what steps should be taken when suspicious or unusual activity has been identified? See, e.g., Wultz v. Bank of China Ltd., 56 F. Supp. 598, 601-602 (S.D.N.Y. 2014); see also In re JPMorgan Chase Bank, N.A., 799 F.3d 36, 41-44 (1st Cir. 2015). Also, does JPMC believe or anticipate that any of EMTC's First RFPs actually implicate the bank examination privilege and/or the production of "Confidential Supervisory Information," and if so, have the applicable state or federal agencies who hold such privileges been notified?

Finally, regarding the contention in your "Second" point that JPMC's production of data stored in JPMC's electronic system that monitors commercial wire transfers for possible fraud will fully satisfy Plaintiff's document requests implicating BSA/AML/KYC matters, please refer to pages 6-7 of our May 8 EMTC Letter explaining the inherent limitations of what such data will show.

"Third" Point. Regarding the "Third" point in your April 28 JPMC Letter concerning Section IV of our April 25 EMTC Letter, JPMC's recent modifications to its narrowing of the time periods for which it agrees to produce responsive documents does not resolve Plaintiff's concerns, which are not "moot," as follows:

With respect to item IV.A. in our April 25 EMTC Letter (re: RFPs 20 and 21), your April 25 JPMC Search Term Letter sent the same day proposed a date range of June 1, 2019 through March 31, 2020 for the production of JPMC documents in and around the Fraudulent Period.

---

[3] For the sake of clarity, this includes the portions of EMTC RFPs 6, 7, 48, 57, 72, 78, 83, 86 and 95 that concern JPMC's AML/BSA/KYC policies, procedures and practices (see April 28 JPMC Letter at n.2), as well as RFPs 12 and 85.

Alan E. Schoenfeld, Esq.                                            May 19, 2023
Page 3

Using a June 1, 2019 start date is acceptable.[4] However, as noted in our May 8 EMTC Letter (at p. 4 n.5), we also can agree to a March 31, 2020 end date, subject to JPMC representing that all post-hoc communications within JPMC concerning the Fraudulent Transfers ended by such date. Otherwise, June 30, 2020 should be the end date.

With respect to item IV.C. in our April 25 EMTC Letter (re: RFPs 88-89), our May 8 EMTC Letter demonstrated (at pp. 2-5) that JPMC's insistence upon a March 1, 2015 start date for these documents is groundless. Our pending May 8 counterproposal is to use a start date of April 1, 2014 in place of March 1, 2015, consistent with the factual showing Plaintiff has made, and to add the targeted date ranges that we proposed for Siriwan and Sorawit, which occur or begin prior to March 1, 2015. Please confirm JPMC will accept these date changes.

With respect to item IV.G. in our April 25 EMTC Letter (re: RFPs 68-70), please refer to pages 9-10 of our May 8 EMTC Letter, and the referenced exhibits annexed thereto, wherein we proffered evidence that there was a $10 million daily overdraft limit applicable to the NY Account, which we assume fully addresses your request at this stage. With respect to the time period for JPMC's production in response to these RFPs, Plaintiff will accept the time range proposed in the April 25 JPMC Search Term Letter, *i.e.*, June 1, 2019 through March 31, 2019, subject to JPMC representing that all post-hoc communications within JPMC concerning the overdraft limit ended by such date. Otherwise, June 30, 2020 should be the end date.

With respect to item IV.H. in our April 25 EMTC Letter (re: RFP 8), Plaintiff will accept the time range proposed in the April 25 JPMC Search Term Letter, *i.e.*, June 1, 2019 through March 31, 2019, subject to JPMC representing that its post-hoc communications concerning JPMC's policies and procedures for determining whether a payment order is "authorized" ended by March 31, 2020. Otherwise, June 30, 2020 should be the end date.

With respect to item IV.K. of our April 25 EMTC Letter (re: RFPs 80-81), Plaintiff will accept the time range proposed in the April 25 JPMC Search Term Letter, *i.e.*, June 1, 2019 through March 31, 2019, subject to JPMC representing that its post-hoc communications concerning clawback efforts and freezing orders ended by March 31, 2020. Otherwise, June 30, 2020 should be the end date.

Contrary to the assertion in your April 28 JPMC Letter (at pp. 2-3, nn.2-4), the letter does not address EMTC's concerns regarding the following RFPs:

- The positions taken in the "Second" point of your April 28 JPMC Letter do not fully address RFPs 47 and 48, which seek documents not necessarily part of JPMC's

---

[4] We have realized an inconsistency between the June 1, 2019 start date for such documents used in your April 25 JPMC Search Term Letter, and the August 1, 2019 start date proposed in your earlier April 12, 2023 letter regarding JPMC custodians ("April 12 JPMC Letter"). In my May 8 EMTC Letter responding to the latter, we accepted the earlier August 1, 2019 proposal, not cognizant of the June 1, 2019 start date already being used. Accordingly, we hereby amend that aspect of our March 8 EMTC Letter to accept June 1, 2019 as the state of the review period in each instance where we had accepted August 1, 2019.

Alan E. Schoenfeld, Esq.                                                        May 19, 2023
Page 4

monitoring procedures prescribed by BSA/AML/KYC regulations. Ascertaining whether payment orders comport with EMTC's business activities (*e.g.*, EMTC's industry, customers, transaction size and frequency) is generally part of commercially reasonable transaction monitoring and fraud detection protocols, and in this case, would be part of a good faith execution of security procedures. Yet in its R&Os to RFPs 47 and 48, JPMC refused to produce any documents. Likewise, on its face, RFP 58 principally concerns non-BSA/AML/KYC prescribed procedures. However, based solely upon BSA/AML/ KYC-based objections, JPMC refused to produce all but one type of document (showing "the final results of any formal reviews concerning the Fraudulent Transfers"). To some extent, the currently proposed JPMC search terms help address this deficiency (assuming JPMC will produce the non-privileged ESI the terms hit upon). We will attempt to further address the deficiency by including additional non-BSA/AML/KYC terms derived from these RFPs in our forthcoming JPMC search term counterproposal.

- Contrary to the "understand[ing]" stated in your April 28 JPMC Letter (at p. 2 n.2; *see also* p. 6 n.9), the material requested in RFPs 62-64 is not necessarily part of JPMC's BSA/AML/KYC-prescribed procedures. Again, a risk profile for EMTC as a customer and any risk scoring system applied to EMTC's account or payment orders therefor can also be part of transaction monitoring and fraud detection procedures, apart from BSA/AML/KYC compliance. For example, such metrics can inform rule sets programmed into a payment monitoring system for transaction alerts. To the extent such Documents exist, they should be produced. In light of this clarification, please advise whether JPMC will produce Documents responsive to RFPs 62-64, to the extent they exist.

- Setting aside for the moment whether JPMC's BSA/AML/KYC personnel should be ESI custodians, the documents requested in RFP 86 also would encompass any communications between JPMC wire room personnel and JPMC's CRO or BSA Officer (or others in the BSA/AML/KYC compliance function) who were consulting on or separately reviewing the EMTC payment orders for potential fraud. *See*, *e.g*., May 8 EMTC Letter at p. 9 & Ex. M (JPMC relaying its "compliance team" concern about an EMTC payment order that proved fraudulent). Yet JPMC has refused to produce any documents responsive to this request based solely upon the alleged irrelevance of BSA/AML/KYC policies, procedures and activities. Please confirm that, at a minimum, to the extent any such Communications exist in the ESI of agreed custodians, JPMC will produce them and not withhold.

"Fourth" Point. The "Fourth" point in your April 28 JPMC Letter (at pp. 2-3) again defers taking a position on whether JPMC will produce custodial ESI in response to RFPs 9, 52-57, 59 and 93, which concern JPMC's assessments and audits regarding the adequacy and effectiveness of JPMC's security procedures, and the use of security procedures recommended by the FFIEC. Your April 28 letter states you still are "investigat[ing]" whether and how JPMC reviews/audits its relevant electronic payment operations, so that JPMC can make a proposal for custodial and/or non-custodial document productions in response to these requests. We have not

Alan E. Schoenfeld, Esq.                                              May 19, 2023
Page 5

heard anything from you since then, including since we asked the status in our May 8 EMTC Letter (at p. 10), and we do not understand the delay. I also note that while JPMC has thus far agreed to an "audit"-based ESI search string, JPMC has not stated whether it will identify and search the JPMC *custodians* most likely to possess such ESI. So contrary to your characterizations, the urgency of ascertaining JPMC's position is not "moot." Please promptly tell us what JPMC will and will not produce in response to RFPs 9, 52-57, 59 and 93 (other than the "final results of any formal reviews" of the Fraudulent Transfers – "if any exist"[5]), from what custodians and for what time periods.

"Fifth" Point. The "Fifth" point in your April 28 JPMC Letter (at p. 3) asserts that, other than with respect to policies and procedures concerning BSA/AML/KYC, JPMC has agreed to produce its policies and procedures "on a variety of topics," including those listed in RFP 6. In fact, JPMC has agreed to produce policies and procedures applicable to the NY Account only for account opening, account documentation, overdraft limits, the acceptance of electronic payment orders, and determining whether a payment order is "authorized." *See id.*; JPMC's R&Os to RFP 6; April 25 JPMC Search Terms Letter at 4. JPMC has *not* agreed to produce *custodial* ESI concerning JPMC's policies and procedures regarding security procedures,[6] transaction monitoring, other aspects of processing payment orders or wires and payment order or wire verification (*e.g.*, review of anomalous or suspicious orders), cash management solutions or accounts part of cash management solutions, otherwise identifying suspicious or unusual activity and/or communicating to the customer questions, concerns, cautions, warnings or other information concerning the foregoing. Also, by limiting the policies and procedures it will produce to those held in "document repositories" (April 25 JPMC Search Term Letter at 3-4), JPMC still refuses to produce *any communications* (*e.g.*, emails) from agreed *custodians* concerning policies and procedures relevant to what occurred with the Fraudulent Transfers.

Further, to argue that EMTC's dispute with JPMC's on-going objections to producing numerous policies and procedures is moot, you assert, "JPMC has also agreed to all of your proposed search terms concerning policies and procedures [and] therefore does not understand your concern." *Id*. If JPMC intends to produce all non-privileged ESI on which JPMC's search terms hit (applied to a proper scope of ESI custodians), please confirm such fact. If that is not the case, and JPMC reserves the right to withhold hit-upon ESI regarding JPMC policies and procedures based upon its objections, then the above issues require resolution now.

"Sixth" Point. As raised in our April 25 EMTC Letter (at pp. 5-6), in response to RFPs 44-46 and 78, JPMC agreed to make only a *non-custodial* production of training materials applicable to the NY Account regarding the acceptance of electronic payment orders and the identification of potentially fraudulent transactions produce requested training. *See* April 28 JPMC Letter at pp. 3-4. In addition to withholding training materials on other relevant subjects (*e.g.*, marketing JPMC's commercial banking services, operating JPMC's monitoring system, and the disputed AML and KYC procedures), JPMC's failure to make a custodial production in

---

[5] *See*, *e.g.*, JPMC R&Os to RFPs 9 and 57.

[6] *See also* discussion below regarding the "Seventh" point in your April 28 JPMC Letter.

Alan E. Schoenfeld, Esq.                                                    May 19, 2023
Page 6

response to these RFPs withholds discovery of precisely what, if any, training communications and materials the percipient JPMC witnesses actually received (*e.g.*, in the wire rooms). *See*, *e.g.*, RFP 44. JPMC must produce such documents, including from the wire room personnel who were presumably trained to review and supervise, whom JPMC refuses even to name.

     "Seventh" Point. The "Seventh" point in your April 28 JPMC Letter (at p. 4) labors without success to explain how JPMC purportedly has stated what it will (or will not) produce in response to the thirty (30) RFPs for which JPMC merely stated it would meet and confer.[7] JPMC still has not committed to producing what most of these RFPs request, particularly with respect to *custodial* ESI.

     Regarding the select non-custodial data JPMC has agreed to produce, please refer to pages 6-7 of our May 8 EMTC Letter explaining the inherent limitations in the data being produced from JPMC's system that monitors commercial wires for possible fraud. Also, please clarify what non-custodial data from JPMC's "ACCESS" system will be produced. Although we agree it is appropriate to produce non-custodial data from the ACCESS system, we do not believe JPMC has ever explained what data it would produce from ACCESS nor do we recall any substantive discussions concerning the content of the anticipated export from ACCESS. Further, while we acknowledge JPMC intends to produce certain narrowly defined, non-custodial "Restricted" security procedure documents,[8] your letter ignores JPMC's refusal to produce custodial ESI concerning the use and application of such procedures by the persons who monitored, and in some cases reviewed and approved, the payment orders in the NY Account that were Fraudulent Transfers. JPMC proposes to produce non-custodial material purporting to show what the applicable security procedures were, but not any custodial material demonstrating how such procedures were applied by relevant JPMC employees, or what they discussed about them when criteria for potential fraud were triggered and the orders were outsorted for review.

     Notwithstanding JPMC's willingness to produce the above limited documents, as it stands, JPMC still has not committed to producing the documents requested in RFPs 10, 11, 17, 25-27, 29-30, 40, 42, 46, 50-56, 60-61 and 65, especially with respect to Communications on such subjects (unless of course JPMC intends to produce all non-privileged documents hit upon by JPMC search terms, applied to a proper scope of ESI custodians).

---

[7] *See* JPMC R&Os to RFPs 10-12, 17-18, 23-33, 40, 42, 46, 50-56, 60-61, 65 and 75.

[8] The parties' current proposed language in the Protective Order states: "Because the 'Restricted' category should be construed narrowly, only the following documents may be designated as 'Restricted': (a) Document(s) describing how and when JPMC's system conducts fraud monitoring for commercial wires, and how and when manual reviews of wire transfers are performed; (b) Document(s) describing the criteria implemented in JPMC's system that conducts fraud monitoring for commercial wires and which causes particular commercial wires to be outsorted for further review; (c) Document(s) describing the criteria that caused certain wires at issue in this case to be outsorted for further review; and (d) All reports generated by the system that conducts fraud monitoring for commercial wires that contain details concerning the specific criteria that caused certain wires at issue in this case to be outsorted for further review."

Alan E. Schoenfeld, Esq.                                                    May 19, 2023
Page 7

**JPMC's General Objections**

With respect to JPMC's General Objection Nos. 9 and 15, Plaintiff will accept JPMC's proposal to log privileged communications with in-house or outside counsel dated through September 9, 2020.

**JPMC's Withholding of Documents**

With respect to item III.D. in our April 25 EMTC Letter (re: RFPs 82-83), Plaintiff will accept JPMC's proposed approach to these RFPs.

With respect to item III.E. in our April 25 EMTC Letter (re: RFP 87), Plaintiff will accept JPMC's proposed approach to this RFP.

With respect to item III.F. in our April 25 EMTC Letter (re: RFPs 72, 76, 77 and 79), Plaintiff's positions on the discovery of subsequent remedial measures are not inconsistent, and your letter compares apples to oranges. At the heart of this lawsuit is the commercial reasonableness and good faith implementation of JPMC's security procedures applicable to the NY Account. If, following the Fraudulent Transfers, JPMC assessed its security procedures to have not met the statutory requirements for commercial reasonableness and/or to be inconsistent with customers' reasonable expectations for transaction monitoring, and tried to cure those shortcomings, that would be relevant to commercial reasonableness and good faith and thus discoverable. In contrast, the only remedial measures by EMTC that JPMC's RFPs 19 and 20 identify are a structural reorganization in Thailand and the reduction of an executive's pay. Not only would such information be utterly irrelevant to the negligence and estoppel arguments JPMC posits, but such discovery also would be unduly burdensome and not proportional to the needs of the case. *See also Klosin v. Nemours*, 2023 U.S. Dist. LEXIS 25099, at *7-8 (W.D.N.Y. Feb. 14, 2023) (evidence of subsequent remedial measures is not discoverable to prove negligence because it would not lead to the discovery of the discovery of admissible evidence; FRE 407 makes inadmissible evidence of subsequent remedial measures "to prove: negligence"). Please confirm JPMC will drop its flawed tit-for-tat argument and provide the discovery Plaintiff requested in RFPs 72, 76, 77 and 79.

With respect to item III.G. in our April 25 EMTC Letter (re: RFPs 29 and 91-93), JPMC's reasons for resisting discovery on these subjects is nonsensical. Our April 25 EMTC Letter (at p. 4) sets forth in detail why RFPs concerning similarly situated commercial banking customers are relevant to the commercial reasonableness of JPMC's security procedures, as your April 28 JPMC Letter acknowledges. The RFPs make no mention at all of BSA/AML/KYC issues. As such, JPMC's "understand[ing]" that our reference to "risk profiles" invokes BSA/AML/KYC regulations is erroneous. Furthermore, as also explained in our April 25 EMTC Letter, the Protective Order in this case will permit JPMC to redact for confidentiality other customers' names, account numbers or other identifying information, mooting the customer confidentiality concern you nevertheless raise. And while industry standards for security procedures may be a subject of expert testimony, discovery of the actual security procedures

Alan E. Schoenfeld, Esq.                                                May 19, 2023
Page 8

JPMC has used for similarly situated customers is directly germane to such expert opinions and the credibility and reliability thereof. Please confirm JPMC will provide the discovery requested in RFPs 29 and 91-93 and that you will meet and confer with us on the criteria JPMC will use to identify similarly situated customers (*e.g.*, by geography, industry, account size/profile, or applicable fraud risk factors).

With respect to item III.H. in our April 25 EMTC Letter (re: RFP 94), setting aside JPMC's litany of objections and purported confusion for a simple request, with which we disagree, Plaintiff will accept JPMC's proposed approach to this RFP, except with respect to the time period. Because industry conferences or meetings often occur annually, the review period should cover a 12-month period so as not to exclude any responsive material. Therefore, we propose JPMC use the period March 31, 2019 through March 31, 2019 for this search. Please confirm that is acceptable.

With respect to item III.I. in our April 25 EMTC Letter (re: RFP 90), subject to reaching agreements with JPMC on its production of documents pursuant to other EMTC RFPs addressed in this letter, which should include relevant JPMC communications with third parties such as outside auditors, consultants and investigators on specific subjects, Plaintiff would be willing to agree that JPMC should not be required to conduct separate searches solely to identify documents responsive to RFP 90 with the understanding that such third party communications would be produced if identified in the course of JPMC's review of documents within the scope of its agreed upon search protocol. Plaintiff is willing to reciprocate if JPMC drops its requests that Plaintiff add custodians, including in house counsel, solely for the purposes of identifying third party communications. Plaintiff reserves the right to revisit this request if such agreements are not reached.

**Narrowing/Altering the Scope of Production**

JPMC's responses in its April 28 JPMC Letter (at pp. 4-7) to most of the items raised in Section IV of our April 25 EMTC Letter are addressed above at pages 2-3. In addition:

With respect to item IV.I. in our April 25 EMTC Letter (re: RFP 41), while disputing the grounds for JPMC's objections, Plaintiff accepts JPMC's proposed approach to this RFP for a final group of JPMC custodians to be agreed upon, subject to EMTC reserving the right to revisit RFP 41 should the custodial discovery JPMC proposed not yield the responsive documents.

With respect to item IV.L. in our April 25 EMTC Letter (re: RFPs 9, 57, 59, 72, 88 and 89), we respond to your April 28 JPMC Letter as follows:

- For RFPs 9, 57 and 59, as discussed above (at pp. 4-5), please promptly provide JPMC's position on providing this discovery, which Plaintiff first requested in January.

- For RFP 72, if JPMC is committing to producing all non-privileged documents that hit upon agreed JPMC search terms derived from this request (applied to a proper scope of

Alan E. Schoenfeld, Esq.                                              May 19, 2023
Page 9

ESI custodians), that is an acceptable means of resolving this item. If not, however, please confirm whether JPMC will produce Mr. Benamara's Communications responsive to each of the ten subparts of RFP 72, not just the categories of material identified in your R&Os to RFP 72.

- For RFPs 88 and 89, if JPMC is committing to producing all non-privileged documents that hit upon agreed JPMC search terms (applied to a proper scope of ESI custodians) using "Essilor" or "EMTC," that is an acceptable means of resolving this item.

**Other RFPs**

Finally, item V.C. in our April 25 EMTC Letter inadvertently transposed the referenced RFP number, which should have stated RFP <u>67</u>, not 76. With that correction, please clarify what, if anything, JPMC is withholding from its production in response to RFP 67.

\* \* \*

As stated in my May 8, 2023 Letter, we prefer to schedule a call soon to discuss your responses to these issues and address open issues. Please let us know some days and times that you are available. In the meantime, all agreements reached on JPMC's responses and objections to EMTC's First RFPs are subject to the parties' reaching a final, global agreement on all ENMTC RFPs. We also reserve the right to raise additional questions or concerns that come to our attention in the course of our investigation and/or in discovery.

Very truly yours,

Randall R. Rainer

cc:    M. Botero
       S. Fitzgerald
       J. Carnovale

# Exhibit B

| From: | Benamara, Illan </O=CORPEXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=E633492> |
|---|---|
| To: | Marchesini, Elisabete; Souza, Joanes |
| CC: | Oliveira, Amanda; Michels, Roberto |
| Sent: | 11/22/2016 4:55:14 PM |
| Subject: | RE: Global CDMC Agenda 11-17 - Essilor/ Brazil |

Hello,
CDMC approval has been obtained in EMEA, US and APAC.

I am still waiting for the minutes

Best regards
illan

---

**Illan Benamara** | Treasury Services | Head of France, Belgium & Luxembourg Corporate Sales |
J.P. Morgan | 14, Place Vendôme - 75001 Paris - France | T: +33 (0)1 40 15 44 51 | M: +33 (0)7 78 69 33 82 | illan.benamara@jpmorgan.com

---

**From:** Marchesini, Elisabete
**Sent:** 22 November 2016 02:20
**To:** Souza, Joanes
**Cc:** Benamara, Illan; Oliveira, Amanda; Michels, Roberto
**Subject:** FW: Global CDMC Agenda 11-17 - Essilor/ Brazil

**Hi Joanes**

Illan told me he already obtained the approval for Essilor from EMEA and NA CDMCs. Tomorrow he expects to also obtain the approval for APAC.

So, I'd like to suggest using the minutes of other regions to leverage our request for Latam. Could we request an ad rock approval for Essilor tomorrow?

Tks
Bete

**Elisabete Marchesini** | J.P. Morgan | Corporate & Investment Bank - Treasury Services | T: (55) 11 4950 3610 | M: (55) 11 99479-0096 | elisabete.marchesini@jpmchase.com
Av. Brigadeiro Faria Lima, 3729 - 14th floor | São Paulo - SP | 04538-905

**Ouvidoria J.P. Morgan: 0800-7700847 / ouvidoria.jp.morgan@jpmorgan.com**

---

**From:** Chang, Janice E
**Sent:** quarta-feira, 16 de novembro de 2016 21:24
**To:** Benamara, Illan; Yuen, Olivia E; Riley, Julia A; Tanneur, Vincent; Talarico, Rodrigo M; Marchesini, Elisabete; Hongrattanakulchai, Phiroon; Cheah, Su-Ann; Oliveira, Amanda
**Cc:** CDMC EMEA; APAC CDMC Submissions; Zeppelini, Glauce S; Souza, Joanes; Muniz-Garcia, Daniel
**Subject:** Global CDMC Agenda 11-17 - Essilor

Attached is the meeting document for Thursday's off cycle Global CDMC meeting. The Global CDMC members have received a separate email with the meeting documents. We will discuss the final bid for ▮▮▮▮ first followed by the non standard terms for Essilor. The dial in numbers are listed below:

## Call Details
- **Date:** 11-17-16
- **Time:** 7:30am – 8:00am EST

Confidential Discovery Material

**Dial In:** Domestic: 1-(888) 575-5762; International: 1-(857) 318-0900; Passcode: 26464997#

**Additional dial in numbers listed below:**

| Country | Local toll-free | Local dial-in | International dial-in |
|---|---|---|---|
| **Australia** | 1800388152 | 0289166593 | +61 289166593 |
| **China** | 108004400488 | | |
| **China** | 108007440505 | 4008866802 | +86 4008866802 |
| **Hong Kong** | | 30126200 | +852 30126200 |
| **India** | 0008004402039 | | |
| **Japan** | 0120369600 | 0367439237 | +81 367439237 |
| **Malaysia** | 1800220025 | 0362074596 | +60 362074596 |
| **Singapore** | 18006221986 | 66221985 | +65 66221985 |
| **South Korea** | 0804710880 | 0234831485 | +82 234831485 |
| **Taiwan** | 0800666950 | 0226567291 | +886 226567291 |
| **Thailand** | 0018004412348 | | |
| **United Kingdom** | 08007836960 | 03301230612 | +44 3301230612 |

**Other countries:**

Global access numbers for local dial-in numbers for international participants

Regards

Janice

Confidential Discovery Material

# Exhibit C

| **From:** | Hongrattanakulchai, Phiroon </O=CORPEXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=F597571B00> |
| **To:** | Cheah, Su-Ann; Nguyen, Darren |
| **CC:** | Benamara, Illan |
| **Sent:** | 11/21/2016 7:42:50 AM |
| **Subject:** | FW: 11-18 EMEA/NA CDMC Essilor |
| **Attachments:** | CDMC Essilor & ▮▮▮▮▮; Essilor Global CDMC Non-Standard Terms FINAL (redline) (2) (3) (2).docx |

Dear Darren, Su-Ann,

This case will go to CDMC tomorrow morning 10:30 SG/HK time. Thank you very much.

Regards,
Phiroon.

Confidential Discovery Material

| From: | McGraw, James </O=CORPEXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=JAMES.MCGRAW> |
|---|---|
| Sent: | 11/21/2016 6:53:36 AM |
| To: | Hongrattanakulchai, Phiroon <phiroon.hongrattanakulchai@jpmorgan.com>; Pon, Patrique BC <patrique.bc.pon@jpmorgan.com>; Pintusopon, Jarin <jarin.pintusopon@jpmchase.com>; Siriyaphan, Pitcha <pitcha.siriyaphan@jpmchase.com>; Godara, Rohit <rohit.godara@jpmorgan.com>; Jun, Hyesi <hyesi.jun@jpmorgan.com>; APAC CDMC Submissions <apac.cdmc.submissions@jpmorgan.com>; Prasad, Pranav <pranav.prasad@jpmorgan.com> |
| Subject: | CDMC Essilor & ▮▮▮ |
| Start: | 11/22/2016 2:25:00 AM |
| End: | 11/22/2016 2:55:00 AM |
| Show Time As: | Free |
| | |
| Recurrence: | (none) |
| Required Attendees: | Hongrattanakulchai, Phiroon; Pon, Patrique BC; Pintusopon, Jarin; Siriyaphan, Pitcha; Godara, Rohit; Jun, Hyesi; APAC CDMC Submissions; Prasad, Pranav |
| Attachments: | Essilor CDMC 11.22.16 .docx; ▮▮▮▮▮▮▮▮ |

When: Tuesday, November 22, 2016 10:25 AM-10:55 AM (UTC+08:00) Beijing, Chongqing, Hong Kong, Urumqi.
Where: Pls see dial in no as below. Passcode: 40655290#

Note: The GMT offset above does not reflect daylight saving time adjustments.

\*~\*~\*~\*~\*~\*~\*~\*~\*

**Item Number 3 (provide this number to operator & wait on the line for your item # to be called; you will be placed on hold and will be notified by operator when the committee members have joined)**

| Time Slot | Item # | Date of Review | Client Entity | Client Name - Ultimate Parent | TMO Name /Presenter | Reason for CDMC | Reason for CDMC 2 |
|---|---|---|---|---|---|---|---|
| 10:30 | 3 | 11/22/2016 | Essilor Manufacturing (Thailand) Co., Ltd | Essilor International Group | Phiroon Hongrattanakulchai | Non-Standard Terms | Essilor 11.22.16 CDMC |
| 10:40 | 3 | 11/22/2016 | Redacted: Client Information | ▮▮▮▮▮▮ | Phiroon Hongrattanakulchai | Sig Deal | Redacted: Client Information |

## PASSCODE FOR PARTICIPANTS: **40655290#**

<u>PARTICIPANT Dial-In Number(s)</u>

*The below Dial-In numbers should be provided to Dial-In **PARTICIPANTS ONLY**.*

| Country | Toll-free number | International/Local |
|---|---|---|
| Hong Kong | | +852 3011 4660 |
| Singapore | | +65 6622 1295 |
| United Kingdom | 080 0085 5072 | +44 (0) 20 3027 1109 |
| United States | 877 605 3379 | +1 212 444 0512 (New York) |
| United States | | +1 408 916 0678 (San Jose) |



Highly Confidential Discovery Material     JPMC_EMTC_00076936

Essilor CDMC 11.22.16 .docx



JPMC_EMTC_00076937

DOCUMENT WITHHELD FOR PRIVILEGE

Confidential Discovery Material

JPMC_EMTC_00076938

DOCUMENT WITHHELD FOR PRIVILEGE

Confidential Discovery Material

DOCUMENT WITHHELD FOR PRIVILEGE

Confidential Discovery Material

JPMC_EMTC_00076940